## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MILITARY ORDER OF THE PURPLE HEART | ) | |
| OF THE UNITED STATES OF AMERICA, INC. | ) | |
| 5413-B Backlick Road | ) | |
| Springfield, VA 22151 | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | Civil Action No. |
|   v. | ) | COMPLAINT |
| | ) | JURY DEMAND |
| | ) | |
| MILITARY ORDER OF THE PURPLE HEART | ) | |
| SERVICE FOUNDATION, INC. | ) | |
| 7008 Little River Turnpike, Suite D | ) | |
| Annandale, VA 22003 | ) | |
| | ) | |
| MOPHSF Holdings, LLC | ) | |
| 7008 Little River Turnpike, Suite D | ) | |
| Annandale, VA 22003 | ) | |
| | ) | |
|     Defendants | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Military Order of the Purple Heart of the United States of America, Inc. ("Order" or "Plaintiff") by and through its undersigned counsel, who hereby brings the following complaint against Military Order of the Purple Heart Service Foundation, Inc. ("Foundation or MOPHSF") and MOPHSF Holdings, LLC ("Holding Company"), collectively referred to herein as "Defendants") for the causes of action stated:

## PARTIES

1.      Plaintiff Order is a District of Columbia not-for profit corporation organized under section 501(c)(19) of the Internal Revenue Code.  The Order is a Congressionally chartered organization comprised of Purple Heart medal recipients governed by 36 U.S. Code Chapter 1405.

The corporation is declared, by statute, to be incorporated and domiciled in the District of Columbia. 36 U.S.C. §140507.

2.      Defendant Foundation is a Florida not-for-profit corporation organized under section 501(c)(3) of the Internal Revenue Code.  Its principal place of business is Annandale, Virginia.

3.      Defendant, Holding Company is a Florida limited liability company.  Its sole member is the Foundation.  It was formed to hold the trademarks, trade names, and trade dress belonging to the Order.

## JURISDICTION AND VENUE

1.      This is an action for breach of contract, trademark and service mark infringement and unfair competition arising under the federal Lanham Act (15 U.S.C. § 1051 *et seq*.) and District of Columbia law.  Plaintiff seeks damages, attorneys' fees, costs, and both preliminary and permanent injunctive relief.

2.      This Court has subject matter jurisdiction under Section 39 of the Federal Trademark Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), in that these claims are brought to determine a question of actual controversy between the parties arising under the trademark and unfair competition laws of the United States.  This Court has supplemental jurisdiction over the Order's state law claims, pursuant to 28 U.S.C. § 1367(a).

3.      Upon information and belief, this Court has personal jurisdiction over the Foundation pursuant to D.C. Code §13-422, in that the Foundation was organized under the laws of the District of Columbia.

4.      In the alternative, the Court has personal jurisdiction over the Foundation pursuant to D.C. Code §13-423(a) in that the Foundation is transacting business in the District of Columbia

and/or has committed unlawful acts outside the District of Columbia which have caused injury to the Plaintiff within the District of Columbia.

5.      This Court has personal jurisdiction over the Holding Company pursuant to D.C. Code §13-423(a), in that the Holding Company is business in the District of Columbia and/or has committed unlawful acts outside the District of Columbia which have caused injury to the Plaintiff within the District of Columbia.

6.      Venue properly lies in this Judicial District under 28 U.S.C. § 1391(b), because a substantial portion of the events giving rise to Plaintiff's claims arose in this Judicial District.


## FACTS COMMON TO ALL CLAIMS

7.      The Purple Heart is a United States military decoration awarded in the name of the President to those wounded or killed while serving with the U.S. military.   It is widely recognized as one of the most prestigious medals given to a member of the military.

8.      As the oldest medal in US history, created by General George Washington during the Revolutionary War, the Purple Heart and its significance is widely recognized by Americans.

9.      The Order was established in 1932.   The Order's members are all recipients of the Purple Heart Medal.   The Order received its Congressional Charter in 1958.   At that time, Congress granted rights to the Purple Heart and associated images to the Order.

10.      Today, the Order provides charitable services to Veterans and their families, including funding of Veterans Service Officers.   More than sixty (60) Veterans Service Officers (VSO) are employed by the Order.   Many VSOs work in local VA clinics, VA Hospitals and are available to assist all veterans.   Last year, these VSOs assisted 135,000 veterans in filing claims with the Department of Veterans Affairs (VA) resulting in the award of over $140 million in

benefits to those veterans.  In 90% of attempts to help veterans, the Order's VSOs were successful. The VSOs are highly skilled and many have more than a decade of experience.  The majority of the operating budget of the Order is payroll for the VSOs.

11.    In 2016, the Order was the first National Service Organization to create a Suicide Awareness Program and appoint a National Officer for the position. The Order has developed a suicide prevention program to combat this pervasive and persistent cause of death among veterans. VSOs play an essential role in the Order's program.  Veterans, their families or friends may call, go online, or contact a member of the Order to request help oftentimes through one of the 500 local MOPH chapters in all 50 States, Puerto Rico and Guam.  A VSO will be assigned to the Veteran in need and will immediately contact that veteran.  The Order can provide many types of assistance in addition to the personal contact by a VSO: adaptive fixtures or modifications to a home, assistance in paying rent or coming up to date on a mortgage or rent to avoid eviction, establishing eligibility for assistance, navigating the VA bureaucracy and many more areas.

12.    In 1957 the Order established the Foundation with the sole purpose to raise funds for the Order's charitable activities.  The Foundation successfully funded the Order's operations for decades.

13.    Currently, the several trademarks for the "Military Order of the Purple Heart" are registered with the U.S. Patent and Trademark Office, including U.S. Reg. 2,208,425 (the "'425 Registration").

14.    The '425 Registration is listed in the records of the United States Patent and Trademark Office as having been assigned to the Holding Company.

15.    The Holding Company is the registrant of several additional trademarks including the words "Purple Heart", and these registrations all refer to the '425 Registration.

16.     The Foundation was established to, and did in fact, act as a licensee of the Order for many years.  The use of the Order's trademarks by the Foundation inures to the benefit of the Order.

17.     The Foundation was legally obligated to, and did, provide proceeds from exploitation of the Order's trademarks to the Order, until its recent repudiation.

18.     On September 1, 2016 an Agreement was executed between the Order and the Foundation regarding the operations of the Foundation.

19.     The Agreement intended to place the trademarks in a new entity, which was eventually named MOPHSF Holdings.  The new entity licensed the trademarks to the Order and the Foundation, and was further empowered to sub-license the trademarks to third parties with the unanimous consent of the Board of Directors of the Holding Company.

20.     The Foundation and the Holding Company have established agreements with manufacturers of consumer goods whereby the current trademarks, trade names and trade dress registered by the Order are licensed for use and a portion of the profits from the sale of these goods goes to the Foundation.

21.     Upon information and belief, the Foundation is still collecting a portion of the profits made from the trademarked items.

22.     The Foundation also solicits donations through its website, where the Foundation holds itself out as the fundraising arm of the Order, and displays the Military Order of the Purple Heart name and registered trademark symbol.

23.     Without funding, the Order will be unable to continue operations.  Employees of the order, including more than 60 VSOs will be laid off.   Veterans Service Officers, certified to practice and highly experienced in such practice before the Department of Veterans Affairs, will

be forced to find other work.  Even if funding is eventually restored, their experience and skill will be impossible to recover.  The lack of assistance in obtaining VA disability claims, pension claims, and other veterans benefits will affect the thousands of veterans.  The absence of the VSOs will cause the suicide prevention programs collapse.  If even one veteran carries out a suicide plan when a VSO could have helped, that will be unacceptable.

24.     The 2016 Agreement requires the Foundation not only to keep the Order informed of the financial and operation status of the Foundation but also allow officers of the Order to review the Foundation's financial and operating documents. To date the Foundation has not provided the Order with the required documentation despite repeated requests.

25.     In contravention of the 2016 Agreement, the National Commander of the Order was not given the opportunity to be present during a meeting of the Board of Directors of the Foundation but instead was expelled.

26.     Per the 2016 Agreement, the Foundation is required to fund the Order's operating budget.

27.     The Foundation agreed, in writing, to provide a $6.4 million operating budget to the Order for the 2019 fiscal year.

28.     On February 13, 2019 the Foundation informed the Order via telephone that they would be providing only $25,000 per month, or $300,000.00 over the course of the entire year, well below the $533,0000 per month operation budget that was submitted and accepted by the Foundation as being reasonable.

29.     The Foundation has since stopped funding the Order altogether.

30.     In March 2019 the Foundation CEO sent the Foundation Board Members a Financial Summary for their March 25, 2019 meeting. The report shows zero future funding for the Order.

31.     Upon information and belief, the Foundation has recently provided donations of over $100,000 to other charities.

32.     Section 3.3 of the 2016 Agreement states:

Third, the Service Foundation will fund the reasonable budget submitted to it by the Order and as approved by the National Finance Committee of the Order, including but not limited to: "grandfathered states", Service Officer Program, legislative affairs, public relations, Ladies Auxiliary, annual convention, membership services, member recruitment, scholarships and other expenses.

33.     The Foundation has breached Section 3.3.

34.     Various remedies are provided for breach of the Agreement by the Foundation.

35.     Section 5.2 of the 2016 Agreement provides:

In the event of the dissolution of the Service Foundation, or should the Service Foundation otherwise go out of business, or the Service Foundation does not fund the Order, the assets or the control of the new entity, will be transferred to the Order. In addition, the Service Foundation agrees to take all reasonable legally permissible steps to prevent the trademarks, trade names, and trade dress held by the new entity from being acquired or transferred to any third party other than the Order.

36.     Therefore, as a result of the failure of the Foundation to fund the Order, Section 5.2 compels an automatic transfer of the assets or control of the Holding Company to the Order.

37.     The Foundation agreed in Section 5 of the 2016 Agreement that the Holding Company will hold all of its "current trademarks, trade names, and trade dress that the parties now or may hold in the future."

38.     Pursuant to the Agreement, the Order is owner of all of the "Purple Heart" trademarks of the Foundation or the Holding Company.

39.     The Foundation sent a letter to the Order in 2018 asserting that the 2016 Agreement was null and void.

40.     The Foundation filed suit against the Order on January 25, 2019, alleging that the 2016 Agreement was terminated, and that Foundation had no further obligations under that Agreement.

41.     The continued use of the trademarks and symbols of the Order by the Foundation, when the funds raised do not, in fact, go to or for benefit of the Order is deceptive and misleading.

42.     The Order's marks are "inherently distinctive" marks and thus are conceptually strong and afforded the greatest protection.

43.     The Order's unregistered marks include:



44.     The confusingly similar marks of the Foundation and the Holding Company are:





45.     As a result of the Order's longstanding use, advertising and promotion of the "Purple Heart" Marks, by itself or under its control, the Order's Marks have acquired a special significance and meaning to the consuming public as identifying the Order as the source of origin of goods and services that bear the marks.  The Order's Marks are broadly recognized, nationally well-known and famous.

46.     Based on the Order's long and extensive use of the Order's marks, and the waiver of rights expressed by the Foundation by relinquishing its rights under the 2016 Agreement, the

Order owns the exclusive right to use those marks in connection with fundraising and providing services throughout the United States.

47.     The Foundation and the Holding Company infringe upon the Order's marks by presenting themselves to the public as the fundraising arm of the Order, while failing to transfer the funds raised to the Order, and instead funding separate initiatives distinct from the needs and services of The Order.

48.     The Foundation and the Holding Company's use of the "Purple Heart" marks in the manner alleged herein is likely to confuse or deceive the public into believing that the Foundation and the Holding Company Defendants' business and commercial activities are owned, authorized, and/or sponsored by the Order, or licensed or otherwise approved by or affiliated with The Order, when they are not.

## COUNT I - BREACH OF CONTRACT

49.     Plaintiff incorporates ¶¶1-48 of this Complaint herein.

50.      The Foundation has failed to fund the Order's operating budget, in breach of the Agreement.   The Agreement requires that the Foundation "will fund the reasonable budget submitted to it by the Order and as approved by the National Finance Committee of the Order, including but not limited to: 'grandfathered states', Service Officer Program, legislative affairs, public relations, Ladies Auxiliary, annual convention, membership services, member recruitment, scholarships and other expenses." Agreement, para 3.3.

51.     In accordance with the Agreement, the Order presented a reasonable operating budget to the Foundation.  The Chairman of the Foundation's board of directors notified the Order in writing that the Foundation would provide a grant of $6.4 million dollars for the current fiscal year.  On February 13, 2019, the Foundation notified the Order via telephone that the Foundation

would only provide a grant of $25,000 per month for the foreseeable future.  The Order requested notice in writing of this decrease, but has not received it.

52.     As a direct and proximate result of this breach, the Order has suffered and will continue to suffer damages.  The Foundation's failure to fund the Order will result in termination of the services that the Order currently provides.  The Order will be unable to pay its employees, including the Veterans Service Officers who currently are certified to practice before the Department of Veterans Affairs.  Once these employees are forced to find new employment, their years and, in some cases, decades of experience will be lost.  This loss will have a ripple effect through the VA as claims take additional time to perfect and require additional review by VA employees.  This will ultimately have a negative impact on the thousands of veterans who are assisted by the Order.

**COUNT II - BREACH OF CONTRACT**

53.     Plaintiff incorporates ¶¶1-48 of this Complaint herein.

54.     The Foundation has refused to grant officers of the Order access to financial and operating records for the entire year 2018 in breach of the Agreement.   According to the Agreement, the Foundation must provide the Order with an opportunity to review financial and operating documents including statements of profit and loss.

55.     Despite demand to review these documents and information, the Foundation has refused.

56.     As a direct and proximate result of this breach, the Order has suffered and will continue to suffer damages.  The lack of funding by the Foundation is a result of its financial status.  The Foundation is required to inform the Order of the financial status.  Without information about the Foundation's finances, the Order is unable to take steps to mitigate the Foundation's failure to

fund the Order's operations, or to take any other possible corrective action base on the state of the Foundation's finances.

## COUNT III - BREACH OF CONTRACT

57.     Plaintiff incorporates ¶¶1-48 of this Complaint  herein.

58.     The Foundation has refused to provide an individual with knowledge of the finances of the Foundation to answer questions.  According to the Agreement, the Foundation must provide the Order with an opportunity to review financial and operating documents including statements of profit and loss.  At the same time the Foundation must answer questions raised by review of the financial documents.

59.     Despite demand to review these documents and information, the Foundation has refused.

60.     As a direct and proximate result of this breach, the Order has suffered and will continue to suffer damages.  The Foundation is required to inform the Order of the financial status. Without information about the Foundation's finances, the Order is unable to take steps to mitigate the Foundation's failure to fund the Order's operations, or to take any other possible corrective action base on the state of the Foundation's finances.

## CLAIM IV - BREACH OF CONTRACT

61.     Plaintiff incorporates ¶¶1-48 of this Complaint herein.

62.     The Foundation has refused provide an annual report in breach of the Agreement.

63.      Despite demands to review these documents and information, the Foundation has refused.

64.     As a direct and proximate result of this breach, the Order has suffered and will continue to suffer damages.  The Foundation is required to inform the Order of the financial status.

Without information about the Foundation's finances, the Order is unable to take steps to mitigate the Foundation's failure to fund the Order's operations, or to take any other possible corrective action base on the state of the Foundation's finances.

## CLAIM V – TRADEMARK AND SERVICE MARK INFRINGEMENT RE: THE LANHAM ACT, 15 U.S.C. § 1114

65.    Plaintiff incorporates ¶¶1-48 of this Complaint herein.

66.    Plaintiff's federally-registered marks are strong and distinctive.  The federal registrations owned by Plaintiff have achieved incontestable status under 15 U.S.C. § 1065 and presently remain in full force and effect.  Those registrations include use of the marks in connection with "providing scholarships, tuition assistance and financial aid to combat-wounded veterans, their dependents and survivors."  And "association services, namely, promoting the interests of combat-wounded veterans, their dependents and survivors."

67.    In addition, Plaintiff's registered marks are used in connection with the sale of various items of promotional goods.

68.    The Foundation's and the Holding Company's aforesaid use of the Order's marks as part of their name, service mark and trademark infringes upon the exclusive rights owned by Plaintiff in its federally-registered marks and constitutes a violation of 15 U.S.C. § 1114.

69.    Defendants' willful and infringing conduct has caused, and is causing, irreparable harm to Plaintiff's trademark rights and will continue unless enjoined by the Court.  Moreover, Plaintiff is without an adequate remedy at law to halt such ongoing unlawful conduct.

## COUNT VI: UNFAIR COMPETITION - THE LANHAM ACT, 15 U.S.C. § 1125(A)

70.    Plaintiff incorporates ¶¶1-48 of this Complaint herein.

71.     Defendants' unauthorized use of the Infringing Mark in connection with fundraising and veterans support services has been made, advertised and otherwise promoted in interstate commerce within the meaning of the federal Lanham Act.

72.     Defendants' unauthorized use of the Infringing Marks is likely to cause confusion, mistake and/or deception as to the source, association, approval or sponsorship of those services. The relevant trade and public are likely to falsely and erroneously believe that Defendants' mark and services are sponsored by, licensed by, or somehow associated with Plaintiff.

73.     By way of their aforesaid conduct, Defendants' use of the Infringing Mark falsely represents that their services and goods are connected or associated with the services and goods of Plaintiff, all to the harm and damage to Plaintiff's own goodwill in the marks. Such willful and intentional conduct on the part of Defendants places Plaintiff's own reputation beyond its control, thereby causing irreparable injury to Plaintiff and amounts to unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.     Defendants' willful and infringing conduct has caused, is causing, and will cause, irreparable harm to Plaintiff's trademark rights and that conduct will continue unless enjoined by the Court.  Moreover, Plaintiff is without an adequate remedy at law to halt such ongoing unlawful conduct.

## <u>COUNT VII:</u><br>COMMON LAW TRADEMARK AND SERVICE MARK INFRINGEMENT, TRADE NAME INFRINGEMENT AND UNFAIR COMPETITION RE: DISTRICT OF COLUMBIA

75.     Plaintiff incorporates ¶¶1-48 of this Complaint herein.

76.     Defendants' conduct, as alleged above, amounts to trademark and service mark infringement, trade name infringement and unfair competition under the common law of the

District of Columbia. Defendants' conduct has been wanton, willful and undertaken in reckless disregard for the superior trademark rights of the Plaintiff.

77.     Defendants' wanton, willful and wrongful acts of infringement and unfair competition irreparably harm Plaintiff and that conduct will continue unless enjoined by the Court. Moreover, Plaintiff is without an adequate remedy at law to halt such unlawful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff requests the Court grant judgment as follows:

1.  Finding that Defendants have breached their contractual obligations to Plaintiff.

2.  Directing the Defendants to return all of Plaintiff's registered trademarks to the Plaintiff.

3.  Finding that Defendants have infringed the Purple Heart marks under §§ 32 and 43(a) of the Federal Trademark Act; and,

4.  Finding that Defendants committed acts of trademark and service mark infringement, trade name infringement and unfair competition under the District of Columbia common law.

5.  Permanently enjoining Defendants and each of their agents, employees, servants, attorneys, successors, affiliates and assigns, and all others in privity or acting in active concert or participation with any of them be preliminarily and permanently enjoined from:

    a.  Using any trademark, service mark, domain name, trade name, corporate name, fictitious business name containing the words, "PURPLE HEART" or the string "PURPLEHEART" with any spacing or punctuation, or any colorable imitation thereof;

    b.  Using the words "PURPLE HEART" in any social media account ID, including, but not limited to any account ID for Facebook, Twitter, Instagram and/or YouTube;

    c.  Using the words "PURPLE HEART", or any colorable imitation thereof, in any email address;

    d.  Using the words "PURPLE HEART", or any colorable imitation thereof, alone or in combination with other words, letters and/or symbols, in any manner which misleads, confuses or deceives or is otherwise likely to mislead, confuse or deceive the trade and/or public as to the origin, affiliation, association or connection of Defendants' goods and/or services with Plaintiff's goods and/or services;

    e.  Committing any acts calculated to cause persons to falsely believe that the services of Defendants are associated or connected with, or authorized or licensed by, the Plaintiff; and

    f.  Competing unfairly with Plaintiff or otherwise injuring Plaintiff's business reputation in the manner complained of herein.

6.    Directing that Defendants account for and pay over to the Plaintiff any and all profits received and withheld by them or either of them from the sale of any goods in connection with their use of the words "PURPLE HEART" and/or as part of a name or mark.

7.    Awarding Plaintiff damages for breach of contract in an amount of be determined.

8.    Awarding Plaintiff treble damages pursuant to 15 U.S.C. §1117(a).

9.    Awarding Plaintiff punitive damages in an amount to be determined.

10.    Granting Plaintiff its reasonable attorneys' fees in accordance with 15 U.S.C. §1117(a).

11.      Granting such other and further relief as it shall deem appropriate.

Respectfully submitted,


/s/

Michael C. Fallings, Esq.

(DC Bar # 19389)

Tully Rinckey PLLC

3724 Executive Center Drive Suite 205

 Austin, TX 78731

Tel.: (512)225-2822